**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLORADO**

Criminal Case No. 23-cr-00326-NYW

UNITED STATES OF AMERICA,

      Plaintiff,

v.

LEONEL CASTILLO,

      Defendant.

---

## SENTENCING STATEMENT

---

The United States of America respectfully files this sentencing statement, requesting that the Court impose a bottom guideline prison sentence and three years' supervised release.

The defendant engaged in a business of dealing firearms without a federal firearms license in a sophisticated raffle scheme. Within a private Facebook group, the defendant operated interactive, fun raffles in which participants would purchase opportunities to win desirable items such as sports tickets and clothing. ECF 34, ¶ 9 The raffles were concealed by the privacy controls as well as raffle payments disguised with false labels to prevent scrutiny. *Id.*, ¶ 16 (on cash app, "Just send under food, drinks or gifts").

That business eventually evolved into raffling firearms without securing a Type 01 federal firearms license that authorized a business of selling firearms, and the defendant's

1

participants came from many walks of life to obtain firearms for the price of a ticket. *See id.,* ¶¶ 9-11, 24. The government believes that the defendant largely acted alone in directing the operations, sourcing the largest volume of his prizes through two licensed gun stores, M.A.O. and O.A., with whom he had direct arrangements to purchase guns and to hold them until winners arrived to complete the transfers. *Id.* ¶ 9. M.A.O. and O.A. both knew that the guns were being raffled and willingly participated in the scheme, even going as far as offering suggestions on how to improve operations.[1]

The defendant also sourced a not-insubstantial number from private citizens, through straw transfers and from their private collections, and transferred those firearms to winners by completing the required background check through the gun stores. *See id.,* ¶¶ 25-30 ("the defendant instructed [C.A.] to send someone …. a photo of his identification to 'transfer [firearms he purchased from C.A.] to the shop'"), 31-38, 42. Remarkably, the defendant somehow managed to operate his firearms business despite being prohibited from possessing firearms himself. *See id.,* ¶¶ 70-76 (criminal history).

The government unfortunately cannot confirm the total number of firearms that were dealt through the raffle—M.A.O. kept falsified records, and O.A. refused to disclose its records to the ATF. Several known facts, however, give a snapshot into the high

---

1       The owners of M.A.O. have been convicted for criminal conduct on behalf of the business in District of Colorado case nos. 24-cr-00034-GPG and 24-cr-00224-GPG, including keeping falsified records and allowing straw purchasing. O.A. has lost its federal firearms license in an administrative revocation.

volume of firearms the defendant was moving, indicating that likely hundreds of firearms were transferred to winners during the scheme's lifetime and before the ATF became aware: (1) M.A.O. was paid $49,008 for firearms and saw at least 30 customers through the raffle [*id.* ¶¶ 45, 46]; (2) O.A. admitted that the defendant had purchased "around 100 firearms" and was paid $12,000 [*id.* ¶ 24], (3) the defendant purchased numerous firearms through C.A. and J.M., and J.M. also won numerous firearms in the raffle himself [*see id.* ¶¶ 26, 27, 42-44]. *See also id.* ¶ 59 (enhancement under § 2K2.1(b)(1)(D)).

Of great safety concern, prohibited people received firearms from the raffle scheme, made possible through straw transfers allowed by the gun stores and at the defendant's suggestion to send third parties to complete straw background checks. ECF 34, ¶¶ 13-18 ("Just make sure you have a valid ID and can pass a background if you can't just make sure and bring someone who will"), 19, 20, 46 ("[C.S.] discussed failed background checks, stating that winners who failed the background check would have someone else come in to complete the background check and obtain the firearm for them"), 47. The sophistication, the high volume of firearms, and the transferring of firearms to prohibited people all demonstrate that the offense is incredibly serious and must be justly punished through a meaningful prison sentence under § 3553(a)(2)(A).

The defendant appears to have been primarily motivated by financial gain, however, and not a conscious desire to put firearms into the hands of dangerous people. Supporting this, he only blindly and passively suggested straw purchasing to winners if they could not pass checks. He did not inquire into their backgrounds further. Also, the

3

defendant has not engaged in any recent violence [*see* ECF 34, ¶¶ 70-76], and the government believes there are few other indicators to assert that the defendant is an imminent risk of committing firearms violence himself. *See also id.* ¶¶ 88-90 (building a family life and home). Thus, the government sees the defendant's lack of violent aims as mitigating under §§ 3553(a)(1), (a)(2)(B), and (a)(2)(C). On the other hand, it cannot be overlooked that the defendant operated his firearms business and possessed firearms himself despite being prohibited since 2009 ECF 34, ¶ 72. This indicates that the defendant is a risk of disrespecting the law in the future, necessitating a punitive prison sentence under §§ 3553(a)(2)(A), (B), and (C). *See id.* ¶¶ 22, 26.[2] When balancing the need for incarceration with the defendant's lack of violent intent, the government concludes that a bottom guideline sentence, and not higher, is sufficient.

The government worries that sophisticated schemes similar to the defendant's will become more common place and thereby transfer firearms into our communities in increasingly novel ways and outside the watch of the ATF, especially as technology advances. For that reason, the government asserts that general deterrence—the need to deter other would-be unlawful gun dealers—under 18 U.S.C. § 3553(a)(2)(B) is a central

---

2      In agreeing to dismiss counts two through five of the indictment, the government does not condone defendant's own prohibited possession of firearms. Rather, his unlawful possession is an aggravator that should be fully considered at sentencing. That said, the government sees this case as centrally focused on the defendant's gun dealing, and the plea disposition is designed to highlight that conduct to the view of the public and other firearms dealers.

consideration here. *See United States v. Walker*, 844 F.3d 1253, 1258 (10th Cir. 2017). Thus, a guideline sentence, and not lower, is necessary to deter others from believing they can freely and inventively deal dangerous weapons outside of regulatory safeguards. And to be sure, legitimate federal firearms licensees like M.A.O. and O.A. who illegitimately support them must also be deterred.

That said, the government appreciates that the defendant took accountability for his firearms dealing conduct here rather than promoting his scheme as a creative loophole in our nation's gun laws—in this manner, his admission is an affirmative statement that raffle schemes such as his are, at their fundamental core, unlawful gun dealing. The defendant's acceptance also shows that he is amendable to some degree towards respecting the law in the future under § 3553(a)(2)(A). These circumstances also contribute to justifying a bottom guideline sentence and not higher.

//

//

//

//

A three-year supervised release term is also appropriate to monitor the defendant if any latent risks lurk after prison, if imposed. Accordingly overall, the government requests that the Court impose bottom guideline sentence and three years' supervised release, a sentence sufficient but not greater than necessary to accomplish the goals set forth in 18 U.S.C. § 3553(a).

Dated this 19th day of December, 2024.

Respectfully submitted,

MATTHEW T. KIRSCH
Acting United States Attorney

*s/ Albert Buchman*
ALBERT BUCHMAN
Assistant United States Attorney
United States Attorney's Office
1801 California Street, Suite 1600
Denver, Colorado 80202
Telephone: (303) 454-0100
E-mail: al.buchman@usdoj.gov

# CERTIFICATE OF SERVICE

I hereby certify that on December 19, 2024, I electronically filed the foregoing **SENTENCING STATEMENT** document with the Clerk of the Court using the CM/ECF system which will send notification of such filing to all counsel of record in this case.

*s/ Stephanie Graham*
STEPHANIE GRAHAM
Legal Assistant
United States Attorney's Office
1801 California Street, Suite 1600
Denver, Colorado 80202
Telephone: (303) 454-0100