# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLORADO

Criminal Case No. 1:23-cr-00326-NYW

UNITED STATES OF AMERICA,

Plaintiff,

v.

LEONEL CASTILLO

Defendant.

## OBJECTIONS TO PRESENTENCE REPORT

COMES NOW the Defendant, Leonel Castillo, by and through his attorney, Charles W. Elliott, hereby submits his Objections to the Presentence Investigation Report and its determination as it relates to guideline calculation, as grounds therefore states as follows:

1. The Defendant objects to the calculation of a base offense level of 20 as noted in paragraph 52 of the Presentence Report and likewise objects to the eight-level adjustment for specific offense characteristics as noted in paragraph 59 of the Presentence Report.

2. The Defendant is reiterating his concerns with regard to those two calculations which were made known to all parties by way of the Plea Agreement and the Defendant's articulated position as to the base offense level and the specific offense characteristics in the context of the Plea Agreement itself.

3. That as to the determination of the base offense level in paragraph 52 of the Presentence Report the Defendant does not object to the citation to USSG § 2K2.1(a)(4)(B) as it relates to the Base Offense determinations if there exists a large capacity magazine, a firearm

described in 26 USC § 5845(a) or if the Defendant was a prohibited person at the time of the commission of the instant offense. However, the Defendant specifically objects to factual assertions paragraphs 54-57 in the Presentence Report that would support a Base Offense Level of 20 for the reasons stated below:

A. As to Paragraph 54 which summarizes the factual assertions in Paragraphs 13-21 of the Presentence Report the Defendant objects to it being a factual basis supporting the offense level of 20 as there is no specific showing that the Defendant actually made available to one Carlos Nevarez or Anthony Gallegos the drum clip or drum magazine that would support the finding of a large capacity magazine. Nothing was ever found with Mr. Nevarez in the traffic stop, there are no records of a drum magazine ever being sold or delivered. All that exists is the statement by the Defendant that Mr. Campbell had a drum clip "to add and make it like a bundle". Nothing in the discovery ever confirms the existence of a drum clip or drum magazine or that even if one existed, that it actually held greater than 15 rounds of ammunition. No such drum clip or drum magazine was ever seen, photographed or that any record of it existed to corroborate the existence of the same.

B. That as to paragraph 55, which summarizes Paragraph 21 of the Presentence Report, there is no evidence that the Defendant actually provided a fully automatic firearm or a firearm with a switch as part of the raffles involved or in any other fashion. In fact, the person "Bubba Mireles" has never been positively identified so there is no statement or other corroboration of the possession, existence or sale of an AR style firearm with a switch that would convert the semi-automatic rifle into a fully automatic rifle. The

2

statement in Paragraph 55 talks only of a picture of an AR style firearm that would be consistent with "some types of triggers capable of firing automatically". The Government never confirmed a sale as suggested by paragraph 55 nor was a fully automatic weapon ever recovered of even mentioned in any other documentation or evidence.

C. That as to paragraph 56, which summarizes Paragraphs 37-38 of the Presentence Report, there is no showing that Mr. Ordonez was provided an extended clip in any fashion by way of this Defendant. Specifically, Mr. Ordonez has never confirmed receiving or even acknowledging the existence of this "extended clip" nor was one ever seen, photographed or recovered. Likewise, no supporting records or documentation in any fashion supports the sale, distribution or even existence of this "extended clip".

D. That the short barrel rifle noted in paragraph 57, which summarizes Paragraphs 39- 44 of the Presentence Report, is based solely on the allegation by Mr. Miranda that the weapon provided to the government came from or through the Defendant with no corroboration, documentation, photograph or other evidence to corroborate a sale of that particular rifle with a short barrel.

4. That the Government did not assert in the Plea Agreement its belief that USSG § 2K2.1 was applicable for purposes of a base offense level of 20; rather they asserted that there was a weapon that was prohibited pursuant to 26 USC § 5845(a) for a base offense level of 18; seemingly the Miranda rifle with a short barrel.

5. That in the Plea Agreement and in this pleading the Defendant asserts that the base offense level would be limited to 14 conceding that the Defendant was a prohibited person but

submitting that the allegations in Paragraphs 54-57 of the Presentence Report are factually insufficient and incorrect to support the findings to confirm and determine a Base Offense Level of 20.

6.     The Defendant further objects to the eight-level addition for purposes of specific offense characteristics noted in paragraph 59.  The Defendant asserts that the adjustment should be one of six levels as the number of firearms involved was between 25 and 99.  Specifically, the assertions in the Presentence Investigation Report are duplicitous as they are double or triple counting the various weapons or are alleging a transaction involving a firearm when one did not exist.  For example, Mr. Slaydon purports that the Defendant brought him 30 customers with 45 financial transactions  (records do exist but the factual accuracy of these records are in question) but many of these transactions did not involve firearms and a person who prevailed at the raffle could decline to take a firearm but instead receive something of similar value from the Federal Firearms Licensed Dealer.  As to Paddock, the owner of the Outdoorsman Attic, his allegation that there were approximately 100 firearms purchased is illogical because Mr. Slaydon had 45 financial transactions for a total of significantly more financial benefit (45 transactions for approximately $45,000.00) than the allegation related to Mr. Paddock of $12,000 for over 100 firearm transactions.  No records were ever received or secured from Mr. Paddock to support any of his statements nor is there other evidence or documentation received from the Defendant or secured from him or any other source to support or corroborate Mr. Paddock's allegations. The further notations as they relate to Miranda and Anaya (and again, there is a dearth of actual records, evidence or documentation as to specific numbers) are double or triple counting because all of these would have been through the various raffles from the Federal Firearms Licensed Dealers.

4

The Defendant asserts that the evidence only supports that there were between 25 and 99 weapons involved.

7. That as a result, the Defendant submits that the adjusted offense level is 20 and with the acceptance of responsibility would become 17 and the Defendant's applicable guideline range would thus be between 24 and 30 months.

Dated this 24th day of December 2024.

Respectfully submitted,

*/s/ Charles W. Elliott*
Charles W. Elliott, #10471
The Law Office of Charles W. Elliott
1600 Stout Street, Suite 920
Denver, CO  80202
Phone:  303.623.2013
E-mail: hamcwe@yahoo.com
*Attorney for Defendant*

**CERTIFICATE OF SERVICE**

I hereby certify that on the 24th day of December 2024, I electronically filed and served the foregoing **OBJECTIONS TO PRESENTENCE REPORT** with the Clerk of the Court using the CM/ECF system and was served on all counsel of record.

*/s/ Charles W. Elliott*
Charles W. Elliott